AMOS E. TUTTLE v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY.

FANNIE A. TUTTLE v. SAME.[1]

May 27, 1895.

Nos. 9247–9248—(121–122).

Public Lands—Grant of Railroad Right of Way.

Under the act of congress of March 3, 1857, commonly known as the
"Land-Grant Act" (11 Stat. 195), and the acts of the legislative assembly
of the territory of Minnesota incorporating the Root River Valley & South-
ern Minnesota Railroad Company, such corporation was authorized to ap-
propriate a right of way for the lines of railway to be constructed by it,
over the public lands of the United States, except as to lands reserved or
disposed of at the time such right of way should be actually located.

Same—Location of Right of Way—Subsequent Patentees.

That after such location of such right of way by such corporation or its
successors in interest, any person purchasing or acquiring from the United
States land with notice of the location of such right of way thereon took
his title subject to such right of way. Simonson v. Thompson, 25 Minn.
450, followed.

Findings.

That the evidence in this case required a finding to the effect that the de-
fendant is the successor in interest, as to the demanded premises, of the
Root River Valley & Southern Minnesota Railroad Company.

Finding not sustained.

Evidence further considered, and *held* that the finding of fact by the trial
court to the effect that the plaintiffs are the owners and entitled to the
possession of the demanded premises is not sustained by the evidence.

Appeals by defendant in each case from an order of the district
court for Nobles county, P. E. Brown, J., denying a motion for a new
trial. Reversed.

*S. L. Perrin* and *Lorin Cray*, for appellant.
*Daniel Rohrer*, for respondents.

[1] Reported in 63 N. W. 618.

START, C. J.[2]  The subject-matter of these actions is a strip of land 100 feet in width over and along the S. W. ¼ of section 8, in township 102, R. 39, in Nobles county, which for many years has been in the possession of the defendant, and used by it as a part of its right of way.

The plaintiff Amos E. Tuttle claims to own and be entitled to the possession of so much of such right of way as is upon the west half of such quarter section. He holds the patent title to such west half, which had its inception in a homestead entry made on November 17, 1871. A previous declaratory statement had been filed October 2, 1871, alleging settlement on September 14, 1871, which was surrendered November 17, 1871. The plaintiff Fannie A. Tuttle claims to be the owner of and entitled to the possession of so much of the right of way as is upon the east half of such quarter section. She holds the patent title to such east half, which had its inception January 1, 1879.

Separate actions were brought by the plaintiffs to recover the possession of so much of such right of way as is claimed by them respectively. The complaints alleged title in the plaintiffs, without disclosing the source thereof, and the answers deny the title of the plaintiffs, and allege title in the defendant. The causes were tried by the court without a jury. The first finding of fact in each case was to the effect that the plaintiff is the owner and entitled to the possession of the demanded premises, and judgment was ordered for the plaintiff. From an order in each case denying its motion for a new trial, the defendant appealed.

We find it necessary to discuss and decide but a single question, which is common to and decisive of both appeals. This question is, does the evidence sustain the finding of the court to the effect that the plaintiff is the owner and entitled to the possession of the demanded premises? The undisputed evidence shows that the defendant is the successor in interest as to these premises of the St. Paul & Sioux City Railroad Company (Sp. Laws 1881, c. 228); that the latter company was the successor, in like manner, of the Sioux City & St. Paul Railroad Company; and that this last-named company was, in like manner, through several intermediate corpora-

---

[2] Buck, J., absent, took no part in the decision.

tions, the successor of the Root River Valley & Southern Minnesota Railroad Company, which was one of the beneficiaries of the land-grant act of congress of March 3, 1857.    11 Stat. 195, Edgerton, R. R. Laws, 82.

The act of incorporation of the Root River Valley & Southern Minnesota Railroad Company, and subsequent acts, provided that it should have a right of way upon, and might appropriate to its own use and control for the purpose of its railroad, land not exceeding 200 feet in width throughout its entire length.    Laws 1855, c. 24, Edgerton, R. R. Laws, 448.    This grant of a right of way is similar in all substantial respects to the one made to the Minnesota & Pacific Railroad Company in its act of incorporation (Laws 1857, Ex. Sess., c. 1, Edgerton, R. R. Laws, 120), which this court construed in the case of Simonson v. Thompson, 25 Minn. 450, and held that it and the land-grant act of March 3, 1857, conferred upon the railroad company a right of way for the lines of railway to be constructed by it over the public lands of the United States, and that after the actual location of such right of way by the railroad company any person purchasing from the United States any of the public lands with notice of such location therein took his patent subject to such right of way.    This grant of a right of way over the public lands gave the railroad company no right over lands already disposed of, at the time of the actual location of its right of way, but as to all persons acquiring an interest in the public lands, with notice of the location of the right of way thereon, the title of the company to the right of way was paramount to any title they could acquire in the land.    It was not a condition to the acquisition of such title by the company that it should file a map of the location of its line.    Simonson v. Thompson, supra;  Coleman v. St. Paul, M. & M. R. Co., 38 Minn. 260, 36 N. W. 638;  Radke v. Winona & St. P. R. Co., 39 Minn. 262, 39 N. W. 624.

Thus in Simonson v. Thompson the plaintiff on June 18, 1870, made a homestead entry on the land in question in that case, and on August 23, 1876, he received a patent therefor, but April 30, 1870, the railroad company located its right of way and constructed its line over the land, and on September 24, 1870, more than three months after the homestead entry, first filed its map of the location of its line;  and the court held, as we have already indicated, that

the patent title was subject to the right of way.    This decision has never been questioned, but has been repeatedly followed, and is accepted as the law of this case.

Now, if the defendant's right of way over the quarter section in question in this case was located thereon and occupied prior to the making of the entries thereof upon which patents were issued, all persons acquiring any interest in the quarter section had notice of such location, and the plaintiffs hold the patent title subject to the defendant's right of way.    The uncontradicted evidence tends to show that the right of way was both located and occupied prior to September 1, 1871, and before the inception of the title of either of the plaintiffs.    Such being the uncontradicted evidence as to the time of the location and occupancy of the right of way, it follows that the finding of the trial court to the effect that the plaintiffs are the owners and entitled to the possession thereof is not sustained by the evidence.

2. The plaintiffs claim that the evidence tending to show defendant's title was not admissible, because the patent is conclusive evidence of title in fee, and cannot be impeached; and, further, that the defendant, having pleaded a legal title, cannot show an equitable one.    Without conceding or denying the correctness of the asserted legal propositions, the short answer to the claim is that the evidence tends to show a legal title in the defendant to the right of way, by a grant thereof, which had become vested by location and occupancy, before the inception of plaintiffs' title, and that the subsequent grant or patent of the same land is necessarily subject to the first grant.    Simonson v. Thompson, supra.

Orders appealed from are reversed, and a new trial granted in each case.